**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |
|---|---|
| CARL DEMONBRUN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FULL SAIL, INC. and FULL SAIL, LLC, dba FULL SAIL UNIVERSITY, <br><br> Defendants. | Civil Action No.: 6:20-cv-1154-Orl-37EJK <br><br> **DISPOSITIVE MOTION** |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**WITH PREJUDICE AND MEMORANDUM IN SUPPORT**

Defendants Full Sail, Inc. and Full Sail, LLC, dba Full Sail University, pursuant to

Fed. R. Civ. P. 12(b)(6) and Local Rule 3.01, respectfully move to dismiss Plaintiff's Class

Action Complaint, with prejudice, for failure to state a claim upon which relief may be

granted.[1]

**INTRODUCTION**

At the onset of a global pandemic, Full Sail University temporarily closed its physical

campus in Winter Park, Florida to protect the health and safety of its students, staff, and

community.  Like scores of other colleges and universities across the country, once the nature

of the pandemic became clear, Full Sail quickly shifted from in-person instruction to a virtual

alternative to prevent the spread of the novel coronavirus and to avoid disrupting the

---

[1]    The Class Action Complaint (Doc. 1-1) is referenced herein as the "Complaint."

education of thousands of students attending classes on campus. Plaintiff, an undergraduate working toward a degree in Film, alleges that the quality of his instruction has been "inferior" as a result of this temporary shift in the method of education. He asserts four causes of action based on the same underlying facts—breach of contract, breach of contract implied in law, unjust enrichment, and conversion—and alleges that Full Sail should be required to provide a refund for the "diminished value" of his education.

Plaintiff's claims all fail as a matter of law. Although he uses different labels to plead four different counts, they all amount to the same claim—educational malpractice—which attacks the quality of the education he received during the pandemic. It is well established that educational malpractice is not a cognizable cause of action under Florida law, regardless of how Plaintiff labels his claims. Courts in Florida and across the country recognize that myriad factors affect the quality of an education, and courts cannot and do not evaluate educational quality or second-guess the operation of schools. For this reason alone, the Court should dismiss the Complaint in its entirety with prejudice.

In addition, there are several independent grounds on which the Court should dismiss each count for failure to state a viable claim. For Count I (breach of contract), the Complaint does not identify any specific contractual provision Full Sail allegedly breached. Nor could it. Full Sail expressly reserved the right to change its curriculum and the manner in which it administered its courses *without a refund of tuition*. The remaining claims—Count II (contract implied in law), Count III (unjust enrichment) and Count IV (conversion)—are defective as a matter of law because (among other reasons) they are wholly duplicative of the breach of contract claim and predicated on the same facts.

In addition, Full Sail, Inc., should be dismissed as an improper party. Plaintiff does not (and cannot) plead facts sufficient to establish any connection between Full Sail, Inc. and the alleged conduct of Full Sail University. Accordingly, the Court should dismiss with prejudice all claims against Full Sail, Inc. on this independent ground.

## RELEVANT FACTUAL ALLEGATIONS[2]

### A.   Background of Full Sail University

Full Sail, LLC, doing business as Full Sail University ("Full Sail"), is an accredited, private university in Winter Park, Florida, founded in 1979, which offers educational degree programs designed for the world of entertainment, media, art, and technology.[3] (Doc. 1-1, ¶¶ 5, 6, 11-12.) Full Sail is an award-winning educational leader in these industries and has been named as one of the top undergraduate and graduate schools for game design and one of the top 25 music schools. (*Id.* ¶ 24.) Alumni include numerous recipients of Grammy, Emmy, and Gold and Platinum Record awards, as well as an OSCAR nominee. (Ex. 1 at 9.)[4]

---

[2]    Full Sail accepts the allegations in the Complaint solely for purposes of this Motion to Dismiss.

[3]    The Complaint alleges that Full Sail, Inc. is a Florida corporation (Doc. 1-1, ¶ 4) but does not set forth any basis for the conclusion that "Defendants own and operate Full Sail University" (*id.* ¶ 6.).

[4]    Plaintiff cited to the Full Sail 2019 Catalog (hereinafter, "Catalog") at the following web address: https://www.fullsail.edu/resources/brochure-file/full-sail-catalog.pdf. (Doc. 1-1, ¶ 18 n.2). However, the 2020 version of the Catalog is currently posted at that web address. Therefore, a copy of the 2019 Catalog is attached for the Court's convenience as Exhibit 1. Because Plaintiff refers to the Catalog in the Complaint, it has been incorporated by reference, and the Court may consider it when deciding this Motion. *See Parekh v. CBS Corp.*, 2020 WL 3400679, at *1 n.1 (11th Cir. June 19, 2020) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Materials attached to or incorporated into a complaint by reference control over contradictory allegations. *Bellamy v. First Class Mgmt. LLC*, 2017 WL 3336450, at *2 (M.D. Fla. Aug. 4, 2017) (Where "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016))).

Full Sail's mission, educational philosophy, and goals are presented in its Catalog. (*Id.* at 7.)  Full Sail's *mission* is "to provide students with an innovative style of education, delivered by a staff of dedicated individuals, that addresses the career opportunities available in an ever-growing, constantly evolving industry."  (*Id.* at 6.)  And, as part of Full Sail's *educational philosophy*, "[w]hether on campus or online, Full Sail's goal is to deliver a real-world educational experience that is engaging and exceptional."  (*Id.*)

Full Sail offers a wide array of programs with courses delivered on campus, online, or both.  (Doc. 1-1, ¶ 25.)  Tuition covers the full cost of a degree or certificate program and is set at the time of enrollment.  (*Id.* ¶ 14.)  The Catalog contains an express disclaimer wherein Full Sail reserves the right to make changes to content, delivery, and administration *without modifying tuition*:

> Full Sail reserves the right to affect changes in tuition, textbooks, equipment, administration, schedules, subject matter, faculty and staff, and to teach courses in any order it deems necessary. Students will be notified of such changes. ***Tuition will not be modified once the enrollment agreement is signed***.

(Ex. 1 at 213 (emphasis added).)

B.    **Full Sail's Response to the Coronavirus Pandemic**

In early March 2020, Governor Ron DeSantis declared a state of emergency due to the spread of the Coronavirus Disease 2019 ("COVID-19"), and by April 1, 2020, he ordered individuals to stay home unless providing essential services.  *See* Florida COVID-19 Executive Order No. 20-52, March 9, 2020 (declaring "a state of emergency exists in the State of Florida" due to the risk posed by COVID-19); Florida COVID-19 Executive Order No. 20-91, April 1, 2020 (ordering all individuals to stay home unless providing essential

- 4 -

services, and defining essential services to include private universities, but only as needed to facilitate online or distance learning).[5]  In response to the COVID-19 pandemic, on or around March 16, 2020, Full Sail temporarily suspended in-person classes and transitioned to virtual learning.  (*Id.* ¶¶ 1, 21, 22.)

## C.    **Plaintiff's Claims**

Plaintiff is an undergraduate in Full Sail's campus program who is scheduled to receive his Bachelor of Science degree in Film in January 2021.  (*Id.* ¶ 3.)  The Complaint alleges that Plaintiff has not attended classes in person since Full Sail closed its campus in response to the pandemic, but that he has continued to fulfill his degree requirements through virtual learning.  (*Id.* ¶ 38.)

Plaintiff asserts four causes of action arising out of Full Sail's suspension of in-person classes—breach of contract (Count I); contract implied in law (Count II); unjust enrichment (Count III); and conversion (Count IV).  (Doc. 1-1, ¶¶ 74-109.)  Each count alleges the same underlying facts.  (*Id.* ¶¶ 74, 87, 94, 102.)  For all counts, Plaintiff alleges that Full Sail's temporary suspension of in-person classes "diminished [the] value" of his education.  (*Id.* ¶ 57.)  Specifically, Plaintiff alleges that:

- Remote learning "decreased [the] value of the education" received (*id.* ¶ 2);

- Students received "less valuable" instruction (*id.* ¶¶ 22, 23, 42 46, 52);

- The education and services provided lack "full value" (*id.* ¶¶ 53, 55);

---

[5]    The executive orders are available at https://www.flgov.com/2020-executive-orders/. On a motion to dismiss, a court may take judicial notice of certain facts, including public records. *Mitchell v. McManus*, 2017 WL 1449698, at *3 n.3 (M.D. Fla. Apr. 21, 2017). Courts have defined "public records" to include facts found on government websites. *See FAS Capital, LLC v. Carr*, 7 F. Supp. 3d 1259, 1266-67 (N.D. Ga. 2014) (gathering cases).

- He received education and services of a "lesser value" (*id.* ¶¶ 60, 62); and

- The education and services delivered were "worth less" (*id.* ¶ 63).

Plaintiff further alleges that he did not receive the education and services that he "reasonably expected." (*Id.* ¶ 59.) What Plaintiff allegedly expected was "an experience" that included "social interaction" with other students and "involvement with faculty" on Full Sail's "high-tech, interactive campus," as well as various other generic "benefits." (*See, e.g.*, *id.* ¶¶ 18, 19, 41.) Plaintiff also allegedly expected access to facilities, equipment, and services (*id.* ¶¶ 1, 17-19), and concludes, without citation to any specific promise by Full Sail, that students were "guaranteed such benefits." (*Id.* ¶ 20.) The Complaint further alleges that Full Sail "promised" to provide extra-curricular "opportunities" and other "experiences." (*Id.* ¶¶ 28, 35-36, 41, 52, 55.)

Plaintiff describes Full Sail's temporary virtual learning, after suspension of in-person classes, as:

- "substandard" (*id.* ¶¶ 42, 51);

- "second-rate substitutes" (*id.* ¶ 50);

- "inferior" (*id.* ¶¶ 45, 50, 53, 67);

- "poorly planned" and "poorly executed" (*id.* ¶ 51);

- "lower quality" (*id.* ¶ 52); and

- "disruptive and challenging" (*id.* ¶ 48).

For each count, Plaintiff also seeks the same damages. (*Id.* ¶¶ 86, 93, 101, 109.) He seeks a refund of tuition equal to the difference between the "fair market value of the on-campus educational and social facilities, services, and experiences" contracted or paid for

and the "actual value of the on-campus educational and social facilities, services, and experiences Defendants delivered." (*Id.*)

<b><u>LEGAL STANDARD</u></b>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is insufficient to allege mere "labels and conclusions," *Twombly*, 550 U.S. at 545, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (quoting *Iqbal*, 556 U.S. at 678).  Instead, to state a plausible claim for relief, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  If the plaintiff fails to meet this pleading standard, the Court should dismiss the complaint.  Fed. R. Civ. P. 12(b)(6).

<b><u>ARGUMENT</u></b>

**I.    COUNTS I THROUGH IV CONSTITUTE EDUCATIONAL MALPRACTICE CLAIMS AND ARE BARRED UNDER FLORIDA LAW**

Each of Plaintiff's claims is, in substance, an educational malpractice claim because each alleges a failure to provide an "adequate education." *Villard v. Capella Univ.*, 2017 WL 9253388, at *3 (M.D. Fla. Dec. 21, 2017) (Florida law "prohibits claims of educational malpractice." (internal quotation marks omitted)).[6]  In fact, Counts I through IV each assert

---

[6]    In *Villard*, the court noted that failing to allow a student to complete a program (*i.e.*, failing to provide a degree *at all*) could constitute a breach of contract.  2017 WL 9253388,

the same underlying facts.  (*See* Doc. 1-1, ¶¶ 74, 87, 94, 102 ("Plaintiff repeats, realleges and incorporates [¶]¶ 1-73 [the statement of facts] as if fully alleged herein.").)  Each count alleges that Full Sail's method of instruction is "substandard" (*id.* ¶¶ 42, 51), "poorly planned, and poorly executed" (*id.* ¶ 51), "inferior" (*id.* ¶¶ 45, 50, 53, 67), and of a "lower quality" than in-person instruction (*id.* ¶ 52).

It is well settled that such claims are not cognizable under Florida law.  *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 914 (Fla. 1995) ("Courts, including those in Florida, have rejected claims of educational malpractice."); *Tubell v. Dade Cty. Pub. Schs.*, 419 So. 2d 388, 389 n.1 (Fla. Dist. Ct. App. 1982) (noting that "the underlying facts pleaded to support each count were, in fact, those that would support a claim for 'educational malpractice,' regardless of the nomenclature" and affirming that Florida does not recognize such claims).  Courts reject claims challenging the quality of an education because courts cannot and do not evaluate or second-guess the wide discretion and flexibility that schools have in instructing students and administering educational programs.  Courts will not enter the classroom, so to speak, to evaluate how or how well a school offers instruction.

Plaintiff cannot evade these established principles of Florida law by labeling the claims as contract, quasi-contract or tort claims.  Florida does not recognize a claim if the gravamen of the claim is educational malpractice, regardless of the nomenclature the plaintiff adopts.  *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298, 1299 (Fla. Dist. Ct. App. 1987) (affirming dismissal of claim with prejudice because "[r]egardless of the

---

at *1, *3.  The reasoning in *Villard* is inapplicable here, because Plaintiff does not allege that Full Sail has failed to provide a degree.  Indeed, Plaintiff is scheduled to graduate in January 2021.  (Doc. 1-1, ¶ 3.)

nomenclature, the gravamen of count III is a cause of action for educational malpractice which is not cognizable in Florida"); *McCurdy v. Va. Coll., LLC*, 2018 WL 1886579, at *3 (M.D. Fla. Mar. 7, 2018) (declining to overturn arbitrator's finding that breach of contract claim "was actually a nonviable educational malpractice claim improperly couched as a breach of contract claim").[7]

Federal courts across the country agree. *See Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1036 (8th Cir. 2019) (under Missouri law, affirming dismissal of claims that constituted educational malpractice claims); *Ross v. Creighton Univ.*, 957 F. 2d 410, 416-17 (7th Cir. 1992) (noting "the great weight of authority . . . bar[s] any attempt to repackage an educational malpractice claim as a contract claim . . . attacking the general quality of an education."); *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) ("To the extent that [plaintiff] presented a general complaint about the quality of the education that he received, his claim was not actionable."); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) ("Ohio does not recognize educational malpractice claims for public policy reasons."), *appeal dismissed*, 2018 WL 3585203, at *1 (6th Cir. July 10, 2018); *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 982-83 (M.D.N.C. 2011) (explaining the policy reasons behind "courts [] declin[ing] to recognize claims for "educational

---

7      The cited opinion is a Report and Recommendation from the Magistrate Judge. The District Court adopted the report, but then vacated its initial order because of a late-filed objection. *McCurdy v. Va. Coll., LLC*, No. 3:17-CV-562-J-32JBT, 2018 WL 1877472 (M.D. Fla. Apr. 19, 2018) (adopting R&R), *vacated on other grounds*, 2018 WL 5814787 (M.D. Fla. Apr. 26, 2018). Several weeks later, the District Court re-adopted the Report and Recommendation, after considering and rejecting the objection. *Id.*, Dkt. No. 27 (M.D. Fla. May 29, 2018).

malpractice"), *aff'd in relevant part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012).

Numerous state courts also agree and reject educational malpractice claims. *Herrera v. Charlotte Sch. of Law, LLC*, 2018 WL 1902556, at \*9 (N.C. Super. Apr. 20, 2018) (under North Carolina law, "if the only allegation is that the education provided was not sufficient, rigorous, or adequate, then the claim must be dismissed because 'there is no cognizable claim for educational malpractice'"); *Blane v. Ala. Commercial Coll., Inc.*, 585 So. 2d 866, 868 (Ala. 1991) (declining to recognize educational malpractice claim); *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (1982) ("Professional educators—not judges—are charged with the responsibility for determining the method of learning that should be pursued for their students.").

Here, the gravamen of each claim is educational malpractice. The claims assert the same facts (Full Sail's education was allegedly insufficient) and seek the same damages (the "diminished value" of the education). Plainly, each count of the Complaint is an educational malpractice claim in disguise and cannot be sustained. Accordingly, the bar to educational malpractice claims warrants dismissal of all Counts.

## II.    INDEPENDENT GROUNDS WARRANT DISMISSAL OF EACH COUNT IN THE COMPLAINT

Every count in the Complaint constitutes an impermissible educational malpractice claim and should be dismissed. In addition, the following independent grounds warrant dismissal of each count.

- 10 -

**A.**    **Plaintiff Fails to State a Claim for Breach of Contract (Count I)**

To state a claim for breach of contract, the plaintiff must allege "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).  Plaintiff has not met this standard because he does not and cannot satisfy any of these elements.

**1.**    ***Plaintiff Fails to Specify the Contract Provision Breached***

It is well established under Florida law that "the legal relationship between a private university and a student is solely contractual in character"; that there is an implied contract *in fact* that the student "pays a fee for services"; and that the private university provides "an educational experience designed to lead to a . . . degree."  *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th Dist. Ct. App. 2008) (internal quotation marks omitted); *see also Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013).  The terms of the contract "may be derived from university publications such as the student handbook and catalog." *Sirpal*, 509 F. App'x at 929; *see also Jallali*, 992 So. 2d at 342.

Where the plaintiff fails to plead the essential terms of the parties' contract, however, courts routinely grant a motion to dismiss on that ground alone.  A plaintiff must plead a "sufficient specification of the essential terms of the parties' contract" within the private university's handbook or catalog.  *Villard*, 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017); *see Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 208-10 (W.D.N.Y. 2013) (dismissing breach of contract claim where plaintiff did not specify a particular rule or procedure that the university supposedly violated); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 358 (N.D.N.Y. 2014) ("Plaintiff must identify the specific terms of the implied contract

- 11 -

that he claims were violated by the university.  The failure to do so will result in dismissal of the contract claim." (internal citations omitted)); *cf. Cruz v. Underwriters at Lloyd's London*, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014) ("It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached.").

Conclusory statements of contract violations are insufficient.  *See Routh*, 981 F. Supp. 2d at 208-10 (dismissing breach of contract claim against university where the pleading made conclusory assertions that the university violated policy); *cf. Cruz*, 2014 WL 3809179, at *2, *5 (granting motion to dismiss where plaintiff alleged defendant breached a policy in an impermissibly "conclusory fashion" and failed to identify any specific provision of the contract that allegedly had been breached).

Here, dismissal is appropriate because Plaintiff fails to identify with specificity the essential terms purportedly breached.  Plaintiff alleges that he and other putative class members "entered into binding contracts" (Doc. 1-1, ¶ 77), that "were formed by multiple documents when students bid by formally registering for courses offered by Defendants" (*id.* ¶ 79), and that "Defendants have failed to provide the services that they were obligated to perform under its contracts with Plaintiff and the proposed Class."  (*Id.* ¶ 81.)  The Complaint does not identify the contract with any specificity, and it surely fails to identify the specific terms allegedly breached.

While a student's contractual relationship with a private university is generally set forth in the university catalogs and manuals, vague references to policy statements or aspirations are insufficient to state a claim for breach of contract.  *See Vega*, 564 F. 3d at 1273 (noting that it is well established Florida law that policy statements in manuals do not

- 12 -

constitute enforceable contract rights). Plaintiff here has failed to plead "sufficient specification of the essential terms" set forth in the university catalogs and manuals. *See id.* at 1272; *see Vurimindi*, 435 F. App'x at 133 (affirming dismissal of claim and holding that a university's "desire" to provide the "highest quality education" does not contain "a specific term that can be considered binding as a contract"); *Cheves v. Trs. of Columbia Univ.*,931 N.Y.S.2d 877, 877 (2011) ("[O]nly specific promises set forth in a school's bulletins, circulars, and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract.") (citation omitted).

Where, as here, a complaint fails to allege specific promises or guarantees that were breached, dismissal is appropriate. *See Ross*, 957 F.2d at 416-17 ("To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the defendant failed to honor."); *Cheves*, 931 N.Y.S.2d at 877 (affirming dismissal of breach of contract claim where university brochure listing certain benefits and services generally available did not guarantee "unfettered irrevocable access for alumni to the campus or its facilities").

The Third Circuit addressed a claim similar to Plaintiff's and affirmed dismissal of the breach of contract count. In *Vurimindi*, a business school student claimed Duke University breached its contract in part by failing to "offer courses that he wanted (and which he described as important to his educational experience)." 435 F. App'x at 134. The Third Circuit held that the plaintiff could not recover because he could not identify any contract provision in which Duke had *guaranteed* him these courses *in exchange for his tuition dollars*. *Id.*

- 13 -

The same logic applies here.  The Complaint lists portions of Full Sail's website, Catalog and publications that generally describe Full Sail's accolades, (Doc. 1-1, ¶ 24), philosophies (*id.* ¶ 27), opportunities (*id.* ¶¶ 28-30, 35), facilities (*id.* ¶¶ 19, 33, 34), experiences (*id.* ¶ 18), programs (*id.* ¶¶ 25, 31, 43), and tuition (*id.* ¶ 26).  But none of the statements Plaintiff identifies constitutes a promise or guarantee that creates a binding or enforceable contract term.  The only "guarantee" Plaintiff even alleges is his vague and conclusory statement that "thousands" of Full Sail students were "guaranteed" unspecified benefits.  (*Id.* ¶ 20 (describing the guaranteed benefits as "such benefits").)  Such references to policy statements and programs are insufficient to state a claim for breach of contract.  *Cf. Vega*, 564 F. 3d at 1273 (policy statements in employee manuals are not contractual rights).

Plaintiff does not and cannot assert that Full Sail failed to register him for a class, deliver instruction in his classes, or provide academic credit for courses successfully completed.  Plaintiff alleges only that Full Sail temporarily failed to provide students access to the campus facilities during the pandemic, when government restrictions and safety concerns did not permit such access.  Plaintiff's claim fails because he has not identified and cannot identify any contractual provision that obligated Full Sail to provide full or uninterrupted access to campus facilities, especially during an unforeseen global health pandemic.  *See Cheves*, 931 N.Y.S.2d at 877.  Accordingly, the Court should dismiss Count I.

### 2. *Full Sail Expressly Reserved the Right to Make Changes to Instruction*

Even if Plaintiff had identified a specific provision that was breached (which he has not), his claim would still fail. Full Sail expressly reserved the right in its Catalog to change its programs and the manner of delivering its courses ***without a refund of tuition***:

> Full Sail reserves the right to affect changes in tuition, textbooks, equipment, administration, schedules, subject matter, faculty and staff, and to teach courses in any order it deems necessary. Students will be notified of such changes. Tuition will not be modified once the enrollment agreement is signed.

(Ex. 1 at 213.)

Because Full Sail has the express right to change the method of delivering its courses without modifying tuition, implementing such a change cannot constitute a material breach as a matter of law. *See Jallali*, 992 So. 2d at 342-43 (holding that where a handbook permitted the university to "revise or modify" its policies "at any time," the university could not be held liable for changing its policies so long as the changes are not arbitrary or capricious);[8] *Gentry v. Harborage Cottages-Stuart, LLLP*, 2008 WL 1803637, at *3 (S.D. Fla. Apr. 21, 2008) (dismissing breach of contract claim where the allegations did not refer to a specific contract term and the express language gave the defendant leeway to make changes). This alone is fatal to Plaintiff's breach of contract claim.

---

[8]     Plaintiff does not and could not allege that temporary suspension of in-person classes during the pandemic and under government order was an abuse of discretion.

- 15 -

### 3.    *Plaintiff Does Not and Cannot Allege Material Breach or Damages*

For similar reasons, Plaintiff does not and cannot allege a material breach of the contract or damages resulting from a material breach. *See Focus Mgmt. Grp. USA, Inc. v. King*, 171 F. Supp. 3d 1291, 1297 (M.D. Fla. 2016) (noting that to "demonstrate a material breach," plaintiff must show that defendant "failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties") (citation omitted). When a student fails to identify the essential terms of the parties' contract that a private university purportedly breached, the plaintiff fails to allege a material breach and damages resulting from that breach. *Villard*, 2017 WL 9253388, at *2 & n.3.

As shown above, the temporary suspension of access to campus does not constitute a breach of a contract term. Moreover, access to campus is not of such significance to the overall educational services a university provides that temporary suspension of access (as opposed to cancelling classes entirely) would constitute a material breach. A similar case decided by the New York Supreme Court is illustrative. In *Paynter v. New York University*, the university had temporarily suspended access to campus following anti-war student demonstrations. 314 N.Y.S.2d 676, 676-77 (1970). The lower court ordered a tuition refund for the instruction claimed to have been lost during the campus closure (*id.* at 680), and the appellate court reversed. 319 N.Y.S.2d 893, 894 (1971). In so holding, the appellate court cautioned against interfering with a private university's "inherent authority to maintain order on their campuses." *Id.* at 894. The court reasoned that while a student might contract for a

certain number of courses, "the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*

The same reasoning applies here. Plaintiff alleges that he contracted to receive a degree in Film from Full Sail University, and assuming he fulfills the requirements, that is exactly what he will receive in January 2021. (Doc. 1-1, ¶ 3.) Under Florida law, the student "'pays a fee for services' and the private university provides 'an educational experience designed to lead to a . . . degree.'" *Jallali*, 992 So. 2d at 342 (citation omitted) (alteration in original). Courts accord great deference to private universities in setting and changing degree requirements, *id.*, and modifying the method of instruction should receive the same deference. The temporary modification of the method of instruction—especially when required to do so during a global pandemic—cannot constitute a material breach of contract.

Nor has Plaintiff alleged recoverable damages for the purported breach of contract. Plaintiff seeks the difference between the "fair market value of on-campus educational and social facilities, services, and experiences" contracted or paid for and the "actual value of the on-campus educational and social facilities, services, and experiences Defendants delivered." (Doc. 1-1, ¶ 86.) But Plaintiff cannot escape the fact that Full Sail provided, and Plaintiff received, credits designed to lead toward the completion of his degree. He has not alleged otherwise. Accordingly, he has failed to plead a material breach or recoverable damages. *Cf. Agbottah v. Orange Lake Country Club*, 2012 WL 3612425, at *2 (M.D. Fla. Aug. 21, 2012) (Dalton, J.) (dismissing as insufficiently pled a complaint based on allegations that plaintiffs "signed a contract and were unhappy with the results").

### B.    Plaintiff Fails to State a Claim for Contract Implied in Law (Count II) or Unjust Enrichment (Count III)

Plaintiff recasts his breach of contract claim as quasi-contract and unjust enrichment claims in Counts II and III (Doc. 1-1, ¶¶ 74, 87, 94), based on the exact same underlying facts.[9]  (*Id.* ¶¶ 74, 87, 94.)  Florida courts refer to a cause of action for a contract implied in law synonymously as "quasi-contract, unjust enrichment, restitution, constructive contract, and quantum meruit."  *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1306 (S.D. Fla. 2012) (quoting *Commerce 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997)).  Thus, the claims can be addressed together, and both fail as a matter of law for the same reasons.

#### 1.    *The Quasi-Contract and Unjust Enrichment Claims Fail as Wholly Duplicative of the Breach of Contract Claim*

The existence of a contract between parties defeats a claim for quasi-contract (also called contract implied in law) or unjust enrichment on the same subject matter.  *Sterling Breeze Owners' Ass'n v. New Sterling Resorts, LLC*, 255 So. 3d 434, 437 (Fla. Dist. Ct. App. 2018) ("Florida law is clear that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.") (internal

---

[9]    This pleading practice, known as shotgun pleading, is not permissible and also warrants dismissal of the Complaint.  *See Ksure of N.Y. Corp. v. BlueChip Power, LLC*, 2013 WL 1410377, at *1 (M.D. Fla. Apr. 8, 2013) (Dalton, J.) (dismissing complaint sua sponte and noting that plaintiff must "identify which factual allegations are relevant to each count"); *Orlando Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 2017 WL 10084346, at *2 (M.D. Fla. Nov. 30, 2017) (Dalton, J.) (dismissing shotgun pleading "with a long list of general allegations" that were "incorporated by reference into each count of the complaint") (citation omitted).

quotation marks omitted)).  Pleading in the alternative does not save a duplicative quasi-contract or unjust enrichment claim.  *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185. 1196 (S.D. Fla. 2017) ("[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal cause of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal.") (internal quotation marks omitted); *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014) ("Plaintiff's failure to state a claim for breach of warranty does not save the unjust enrichment claim.").

Plaintiff's allegation that an express contract or a contract implied in fact exists and that Full Sail's obligations are set forth in its Catalog and promotional materials are fatal to his quasi-contract and unjust enrichment claims.  All three counts are based on the same predicate facts.  (Doc. 1-1, ¶¶ 74, 87, 94 (alleging and incorporating ¶¶ 1-73).)  Thus, Plaintiff's allegation that the unjust enrichment claim is pled "in the alternative" (*id.* ¶ 96), does not save it from dismissal.  *See Koski*, 347 F. Supp. 3d at 1196.  Unless a plaintiff alleges a truly alternative theory on the facts, a quasi-contract or unjust enrichment claim pled on the same facts, in the alternative to a breach of express contract claim, must be dismissed.  *See id.*  Because Counts II and III are based on the same facts as Count I, they should be dismissed.  *Sterling Breeze*, 255 So. 3d at 437.

> **2.     *Plaintiff Does Not and Cannot State a Claim for Quasi-Contract or Unjust Enrichment Because Universities Have Broad Discretion to Conduct Operations***

As a separate and independent ground for dismissal of Counts II and III, Plaintiff cannot satisfy the elements of a quasi-contract or unjust enrichment claim.  To recover under

a quasi-contract or unjust enrichment theory, a plaintiff must show: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred, and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Commerce P'ship*, 695 So. 2d at 386. Thus, to adjudicate Plaintiff's quasi-contract claims, the Court must necessarily assess Full Sail's judgment in establishing its operating procedures and methods of instruction during a global health crisis. This would be an improper role for the Court as a matter of law.

It is well established that universities have broad discretion to manage their academic affairs. *See John B. Stetson Univ. v. Hunt*, 102 So. 637, 640 (Fla. 1927) (indicating that a private college may pass reasonable regulations, "unless such regulations or rules are unauthorized, against common right or palpably unreasonable"); *Jallali*, 992 So. 2d at 343 ("A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes."). This is especially true during times of emergency and uncertainty. *See Paynter*, 319 N.Y.S.2d at 894 (holding that the lower court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period" after the Kent State riots in 1970); *Bauza v. Morales Carrion*, 578 F.2d 447, 453 (1st Cir. 1978) ("We think in general institutions may be presumed to reserve for themselves some degree of discretion in dealing with uncertain

- 20 -

contingencies despite the fact that they have committed themselves to a formal and orderly procedure for regular decision-making activities.").

In *Jamieson v. Vatterott Educational Center, Inc.*, a federal court in Kansas addressed a motion to dismiss a complaint on facts similar to those Plaintiff alleges.  *See* 473 F. Supp. 2d 1153, 1159-60 (D. Kan. 2007) (alleging defendant failed to provide equipment, laboratories, classrooms and other facilities necessary for teaching and learning plaintiffs' courses of study).  In dismissing the claims, the court reasoned:

> Indeed, an inquiry into these allegations would require the trier of fact to weigh the qualifications of the instructors and the methods by which they taught; to review of the number and types of classes in the courses of study; to determine what is and is not material in a course of study; to determine the type of equipment, laboratories, classrooms and other facilities necessary to teach students given Vatterott's tuition rate.  This is the type of comprehensive review courts have sought to avoid, as it replaces the judgment of educators for those of judges and juries.

*Id.* at 1161.

These legal principles (like those prohibiting educational malpractice claims) are fully implicated here.  Plaintiff concedes that Full Sail transitioned to remote learning "to protect the public health" (Doc. 1-1, ¶ 53), yet he asks the Court to find that Full Sails' conduct was inequitable and to order Full Sail to refund tuition in such circumstances.  This is precisely "the type of comprehensive review courts have sought to avoid, as it replaces the judgment of educators for those of judges and juries." *Jamieson*, 473 F. Supp. 2d at 1161.  As a matter of law, Plaintiff's quasi-contract and unjust enrichment claims must fail because Florida courts will not interfere with a private university's processes, procedures and regulations.  *Jallali*,

992 So. 2d at 343; *John B. Stetson Univ.*, 102 So. at 640; *Milatana v. Univ. of Miami*, 236 So. 2d 162, 164 (Fla. Dist. Ct. App. 1970).

      **C.**       <u>**Plaintiff Fails to State a Claim for Conversion (Count IV)**</u>

Plaintiff's conversion claim fails for several independent reasons.  Conversion is "[a]ny act of a person in asserting a right of dominion over a chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession to which the owner is entitled."  *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005) (quoting *City of Cars, Inc. v. Simms*, 526 So. 2d 119, 120 (Fla. Dist. Ct. App. 1988), *rev. denied*, 534 So. 2d 401 (Fla.1988)).  "To establish a viable claim for . . . conversion where the parties have a contractual relationship . . . conversion must go beyond, and be independent from, a failure to comply with the terms of the contract."  *Tulepan v. Roberts*, 2015 WL 235441, at *6 (S.D. Fla. Jan. 16, 2015).

      ***1.***       ***Plaintiff's Contract Claim Cannot Be Recast as a Tort Claim***

Plaintiff's conversion claim fails because it is the same as his contract claim.  Courts routinely reject attempts to plead around a breach of contract claim by asserting the same facts under the guise of a conversion claim.  *See, e.g.*, *Panama City Beach Condos, Ltd. P'Ship v. Adjusters Int'l Colo., Inc.*, 2008 WL 11340313, at *1 (N.D. Fla. Nov. 28, 2008) (acknowledging the "unbroken line of cases" confirming that a mere contractual obligation to pay money cannot sustain a claim for conversion).  Indeed, "[t]he Eleventh Circuit and Florida courts have consistently held that 'a conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract.'"  *Tulepan*, 2015 WL 235441, at *6 (quoting *Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin &*

*Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 838 (11th Cir. 1988)); *see also Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1109 (11th Cir. 1998) ("This general rule is an expression of the principle that 'an action in tort is inappropriate where the claim is based on a breach of contract.'" (quoting *Douglas v. Braman Porsche Audi, Inc.*, 451 So. 2d 1038, 1039 (Fla. Dist. Ct. App. 1984))).

Florida courts enforce this rule regardless of whether the contract is express or implied. "An action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970). Courts also dismiss conversion claims that only allege "monetary debts" that are the subject of a breach of contract claim. *Al-Ghena Int'l Corp. v. Radwan*, 2014 WL 12729283, at *7 (S.D. Fla. Apr. 15, 2014). Plaintiff's conversion claim fails because it seeks the same refund as the breach of contract claim, and it does not "go beyond" and is not "independent from" the alleged "failure to comply with the terms of the contract." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055-56 (Fla. Dist. Ct. App. 2008) (holding that a plaintiff cannot circumvent a contract by bringing a conversion claim or other tort claim).

### 2.    *The Conversion Claim Also Fails on the Merits*

In addition to the fatal flaws identified above, Plaintiff's conversion claim fails on its own merit. Plaintiff alleges he had a "property interest" over the "monies" he paid as tuition "for the March 2020 term and subsequent terms." (Doc. 1-1, ¶¶ 104-105.) Plaintiff also asserts he had a possessory interest in a "level of on-campus educational and social facilities, services, and experiences" with which Full Sail allegedly interfered when it did not provide

- 23 -

those services, despite retaining Plaintiff's tuition payments.  (*Id.* ¶ 105.)  Both theories of conversion fail.

*First*, because the parties agreed on the amount of tuition Plaintiff would pay, Full Sail's acceptance of the tuition payment was not an "*unauthorized* act [depriving] plaintiff of that money."  *Tulepan*, 2015 WL 235441, at *8 (emphasis in original) (citation omitted).  Nor was Full Sail's retention of the tuition payment unauthorized because Full Sail had the contractual right to affect changes to instruction without modifying tuition.  *Id.*; *see supra* Section II.A.2.

*Second*, Plaintiff's theory that Full Sail's temporary suspension of in-person classes "diminished [the] value" of his education (Doc. 1-1, ¶ 57) cannot support a conversion claim.  "Reducing the value of someone's ownership interest is not the same as exercising dominion over that person's ownership interest."  *In re Vega*, 2014 WL 2621118, at *6 (Bankr. M.D. Fla. June 12, 2014).

*Third*, to the extent Plaintiff alleges he had a right to access Full Sail's campus or facilities, his conversion claim relies on an alleged right to access real estate.  Real property cannot be the basis for a conversion claim.  *See* 18 Am. Jur. 2d Conversion § 15 ("An action for conversion generally lies only with respect to personal property; real estate is not subject to conversion."); *see also Collins v. Intervest, Inc.*, 418 So. 2d 1030, 1031 (Fla. Dist. Ct. App. 1982) (under Florida law, realty "cannot be the subject of an action for conversion").

Plaintiff's attempt to stretch conversion law to fit his case should be rejected.

**D.**      **Plaintiff Fails to State Any Claim Against Full Sail, Inc.**

Full Sail, Inc., is not a proper defendant and should be dismissed.  The Complaint

contains only the following allegations specific to Full Sail, Inc.: that it is incorporated under Florida law, has a principal place of business in Winter Park, Florida, and can be served through its registered agent. (Doc. 1-1, ¶ 4.) The Complaint does not allege that Full Sail, Inc., does business as Full Sail University, that it operates the university or that it had any role in administering Plaintiff's degree program or in determining Full Sail University's response to COVID-19.

When a holding company or another corporate entity is named—but has no actual connection to the conduct alleged—courts dismiss the wrongly named corporation. *E.g.*, *Vickery v. Cumulus Broad., LLC*, 2016 WL 4382703, at *3 (M.D. Fla. Aug. 2016) (Dalton, J.) (dismissing claim with prejudice against a defendant who was not a party to the contract at issue); *Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 834 (E.D. Mo. 2012) (dismissing a parent entity that was just a holding company and had not sold the product at issue).

The correct defendant here is Full Sail, LLC, which is alleged to own and operate— and do business as—Full Sail University. Full Sail, LLC issued the Catalog on which Plaintiff bases his claims. In contrast, there are no allegations that Full Sail, Inc., is involved in any of the conduct asserted in the Complaint. Consequently, the Court should dismiss all claims against Full Sail, Inc.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to grant this Motion and dismiss all counts in the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated:  July 31, 2020

Respectfully submitted,

/s/ *David E. Mills*
David E. Mills (admitted *Pro Hac Vice*)
Dana J. Moss (admitted *Pro Hac Vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
dmoss@cooley.com

Elizabeth M. Wright (admitted *Pro Hac Vice*)
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Tel.: (617) 937-2349
Fax: (617) 937-2400
ewright@cooley.com

Vincent A. Citro
Florida Bar Number: 0468657
Law Office of Horwitz & Citro, P.A.
17 East Pine Street
Orlando, FL 32801
Tel.: (407) 843-7733
vince@horowitzcitrolaw.com
Local Counsel for Defendants

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July 2020, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF System which will send notice

of electronic filing to all parties of record.

/s/ *David E. Mills*
David E. Mills (admitted *Pro Hac Vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899
dmills@cooley.com
*Counsel for Defendants*

230899920

- 27 -